which is being submitted on the briefs today without oral argument. That is Appeal 2008-7011, Ellis v. Department of Veterans Affairs. Two cases are before us for argument. We'll hear argument first in Golden Bridge Technology v. Nokia et al. Appeal 2007-1215. Mr. Turner, good morning to you. Welcome to the court. Good morning, Your Honors. Please proceed. May it please the Court, I've been introduced already, but I am Duncan Turner, appearing here on behalf of Golden Bridge Technology. We're seeking reversal of a summary judgment arising from the Eastern District of Texas in a case entitled Golden Bridge Technology v. Nokia and Lucid Technologies. Golden Bridge has settled with Nokia, so as you know, the complete exemplary remaining party on the defendant's side is Lucid. I know you've read the briefing and I appreciate you've done that, so I'd like to get to some key points and just sort of hit what I think are going to be the points of contention. Would you be willing to start with the issue of waiver of the specific anticipation argument that you advance here on appeal? Well, Your Honor, the argument that is there is the issue of whether the Hockenden reference has a broadcast control channel or not, and we do concede that that is a new argument, although it is consistent with the claims construction. Well, I'm trying to understand what your argument is as to why waiver doesn't block you. Well, Your Honor, I believe that it should be considered. I've read the parameters of when the Court will and won't do that. It seems like it's pretty central to the case in terms of the Hockenden references. Well, even assuming that it's dispositive, not just central but absolutely dispositive, why doesn't waiver apply? Well, Your Honor, I think it just has to go to the context of the case and the equities of the case and nothing else in terms of... Well, waiver really doesn't turn on equities. It turns mainly on notions of orderly procedure and fair notice to the trial judge and fair notice and opportunity to respond to the opposing side. Now, as I grasp it, the argument that you make on appeal was plainly not presented to and not decided by the trial court, either adjudicator, and no opportunity for your opponent to respond to that argument with evidence or counterargument or authorities or otherwise. And so I'm trying to understand what considerations you can cite that would weigh in favor of our not holding you to be blocked by waiver. Your Honor, we weren't counseled below, but it appears clear from the record that throughout the claim construction that was being advanced by Golden Bridge... Well, I'm talking about summary judgment of the anticipation. I'm not concerned about claim constructions. It seems to me you were under a burden in filing your opposition to the summary judgment motion to raise every ground to resist invalidation for anticipation, and you raised, as I recall it, two grounds, and they were litigated, and now on appeal you're trying to raise a third distinctly different ground that was not presented or litigated below. I don't believe that there was a lot of briefing on that, but I do believe that the record shows that Golden Bridge was consistently advancing this claim of innovation with the broadcast control channel that was not present in the Hocklin reference, which is clear. There have been some issues now... Well, I don't see how I can agree with you. It looked to me like it was not presented at all in any form below, either on the summary judgment opposition or on the objections to the magistrate judge's report. It looked to me like it would have had to be raised probably in both of those documents. So can you point to something in the summary judgment opposition or in the objections to the magistrate's report that raises the argument or the issue or the point that you're trying to make to us? No, Your Honor, and I was really speaking specifically to notice to the other side in terms of the process with claims construction and so forth because that was... Yeah, but the issue isn't claims construction. The issue is anticipation by two particular references. And what is disclosed in particularly the Hakeem reference. I mean, I read the great brief and it says GBT concedes it has presented a new argument. Are you now taking that back? Are you saying that... I mean, I'm understanding your argument to Judge Michel right now to be that, no, this isn't a new argument. I think what I was saying is the factors below, in terms of a surprise issue, the factors below in terms of what GBT was advancing as the nature of their claims was consistent with that. But I don't retract at all what we said in the brief because we don't want to be candid with the court about that. So you're making a new factual assertion with regard to what is disclosed or taught by the Hakeem reference, Hakeem in reference, for the first time on appeal? Yes. Yes. Okay. And as I understand it, you make two arguments in the gray brief, which you don't address this in the blue brief at all. And when the red brief points it out, you make two arguments in the gray brief. And the first, I have to say, or the second, the one that appears on page 19 to 20... I'm sorry, Your Honor, I'm having trouble hearing you. I'm sorry. On page 19 to 20 of your gray brief, you make a total of two arguments as to why you think the court should address this factual assertion for the first time on appeal, contrary to our extensive precedent saying we won't do this. And you say GBT observes it has new counsel on appeal and that the present distinction was not addressed by prior counsel. Are you suggesting that a new attorney on appeal is a reason why this court should consider a factual argument that the prior counsel failed to find or address below properly? No, Your Honor. I just think it's a factor in terms of explaining to the court why we're presenting this as well. And then just on a factional matter, you just asserted we weren't trial counsel below, but my understanding is you personally were substituted in order to give oral argument in this case, were you not? I'm actually the third counsel in this, Your Honor. The brief was actually prepared by an intervening law firm. Okay. So you were not involved in this case at any point during the trial below? No. You personally? No. Okay. Let's see if we can get off this issue. I think we all know that it's not unheard of for a court in the interest of justice and to be sure that the result is correct to find a way of accommodating. I know you asked for a remand. And rather than argue here as to what should or shouldn't have been raised, I think it would be helpful to me if my colleagues agree to use these few minutes on the merits of the point that you think is your best point, whether it's for remand or reversal or something else. To do that, I'd like to just talk about the invention of the patent itself. And if I can talk about the benefits, it will help me to offset the differences and highlight the differences. The whole issue here, and I try to make this as simple as I can with this kind of subject matter, but it's all about the efficient use of these channels. The bandwidth is crowded. There are just so many signals that couldn't fit in the air at any one time. And the 267 patent accomplishes this by having a base station as an initial step in the process to transmit this broadcast control channel. It essentially implants into any remote station or handset that comes within its range enough information so that it can efficiently communicate and actually send a message with that information. But, Mr. Turner, no one is questioning the value commercially or scientifically of what the patent supports to cover. The only issue is whether those same innovations were present in either or both of the prior art references. Well, yes, Your Honor, I'm moving to that. In order to highlight them, I have to say what's in one and what's not in the other. It's an improvement over the prior art because it features this downlink synchronization from the base station that fully empowers the handset to be able to talk back to the base station. It also keeps the coordination traffic to a minimum. In other words, in the initial sequences, the handset is merely talking to the base station to establish that contact has been made. There's no message or there's no data that's on that. The data transmissions are the big hogs of bandwidth. And so the idea is with this invention, you shouldn't send the big piece of information until you know you've got a clear channel with the base station. And for that reason, you have the sequence of sending preambles until you get an acknowledgment. And then after acknowledgment, you can send the message without any further coordination or traffic. Now that argument you've already made, what is the new argument that you believe would turn the tide? In terms of the disclosure of the new argument? Yeah. Well, the previous invention doesn't teach, the prior art doesn't teach this initial download of information onto the handset. That's what I wanted to be sure about is just that first initial step of the download. That's right. There's a minimal amount of information so that the handset and the base station can recognize each other. And then under IS-95, for instance, the handset starts sending what's called an access probe. The access probe has a preamble and a message attached to it. So it's sending the big block of information. And then if it doesn't make contact, it sends it again and it sends it again. And you have these multiple iterations of sending the message, the big block of information, over the airwaves. And if you can avoid that, which the 267 patent does, then you've got a great benefit. Similarly with the Hockenden reference, we've already talked about the fact that it doesn't teach the base station control channel. There's some reference to minimal communication so that it can talk. But the synchronization doesn't happen. But I think the magistrate judge did find synchronization, did he not? Did he find what? Didn't the magistrate judge, didn't Judge Love find that there was synchronization? No, I believe the issue there was it's a timing issue. And when does synchronization happen? And if you have prior synchronization before you send the message, that's one scenario. And if you have synchronization later in the sequence, then you have not accomplished the benefit of the invention. The claims that remain, incidentally, are claims 13 and 23. 13 teaches a device and 23 teaches a process. When we briefed this, whoever briefed it, they briefed all the claims that had existed, both Renokia and Lucid. And I ask that the court consider all of that briefing in context, even though the remaining claims are just 13 and 23. And I see that my time has— Counsel, can I ask you one unrelated question, which is, you're Duncan Turner, correct? Yes. Okay. Well, a motion was filed to this court substituting you from Mark Lorbecki, and the motion read, and I quote, Mr. Turner is fully versed in the details of the appeal since he has been involved in the case as trial counsel and has taken part in drafting the appeal. Is that not a true statement? I was not involved at the trial court level. So that's not a true statement to this court. It was not true. Thank you. All right. Let's hear from the other side, and we'll restore the three minutes of rebuttal you sought to reserve, Mr. Turner. Mr. Nelson, good morning to you. Good morning, Your Honor. Welcome. It would help us most if you would respond directly to what was argued orally here by Mr. Turner, because obviously you've already responded brief to brief. Correct. The first point I was actually going to make was to clear up the issue about trial counsel belonging and the statements that have been made, but I'll move on to the waiver issue. I understand the argument they're making, but I also do not hear anything in here that would fit within this court's jurisprudence as to why there should be a not being an application of this court's waiver law. We'll figure that out. And, in fact, there's nothing that's been said here by GBT that couldn't be said by every single litigant that comes before this case, whether it be in the case of a defendant coming up on an infringement verdict. Because if I'm the defendant and we had a trial, or whether it be a summary judgment would be an easier case, and GBT would come forward and say, here's the evidence as to why it is your product infringes. I come forward then, Rule 56, it's my burden then as the defendant to point out genuine disputes of material fact as to why that's not the case, why there are certain elements that are not met. And that's my burden on Rule 56. The court then considers that, and that comes up. So here we can have exactly the flip side in this case where there's a summary judgment motion by a defendant, and the defendant makes the argument. They're best tried to the trial court. The trial court considers that and says, no, I disagree with you. You have not raised a genuine dispute of material fact, and therefore I grant summary judgment. Now come up on appeal, and I argue, well, there's this other element that I didn't raise any factual questions on, and now I want to argue about that. So your argument, as I understand it, is if we open the door in this case, we're opening the door really wide, that there's no special distinction in this case, and that in every single case someone could argue, I have a new factual issue I didn't present below. That's absolutely correct, Your Honor. And in fact, it's particularly true here because this isn't a situation where the issue, let's just take the Hockney reference and the broadcast synchronization channel element that GBT is now arguing admittedly for the first time on appeal. That was before the trial court. It was a Rule 56 motion. It was my burden as a defendant to come forward with my evidence, including expert reports and those kinds of things as to why all the elements were met by the Hockney reference. I did that. We put those things in. My expert, we had an expert report that said that those Let me interrupt you. If you intend to spend your entire argument saying why we shouldn't listen to this argument, I'm not so sure that that's efficient. Again, as I said before, we all know that in the interest of justice, courts have accommodated new issues, new arguments. Perhaps they've remanded. Perhaps they've requested supplemental briefing. Perhaps they have held it isn't that different. You should have done it before. But if you intend to talk about the merits of the argument, I'd encourage you to do so. Yes, and that's exactly what I'm moving on to here in the context of the summary judgment motion. We provided citations in our expert report citations. Some of the things in the record would direct your attention to the appendix at pages 432 and 33, at 176, and at 178 in the appendix. All of these are citations that we made in the summary judgment papers that show, in fact, there is synchronization that takes place in Hocken and both before to set up the downlink channel, which is what GBT argues on appeal that doesn't occur, and there's synchronization in the uplink channel. So we have it in both directions. It's not clear from their brief, their reply brief, whether they're arguing that the Hocken in reference doesn't disclose synchronization in the downlink or in the uplink. And as I sit here, I honestly don't know which way they're arguing because they seem to have argued it both ways. But the fact of the matter is in those citations that I've given you and in the citations that we provided in our Rule 56 motion that are part of the record, those two things do occur in Hocken. So it's not only the fact that this argument was not raised. But then it's not a new argument, is it? If you're debating whether or not there was synchronization. Sure, it is a new argument because it was my burden to come forward first and say all the elements are met. I did that. As the district court recognized, they made one argument with respect to Hocken, and that was the specific method that Hocken disclosed for sending another preamble. In other words, was it a passive or an active thing? Do you have to have an active command from the base station, say, send me another preamble? I didn't get that one. Or do you have a passive, just a timed passage to send another preamble? That was the distinction that they drew, and that's what the district court considered. They did not contest this element. They never raised any factual dispute. They never said, no, your evidence that you provided in these citations that I just provided to the court does not show that there's broadcast synchronization. So as your Honor suggested in questioning of opposing counsel, there was no further discussion. Of course, we never came back in the reply brief and said, well, they're wrong. They say that synchronization is not disclosed. Here's the reason they're wrong because they didn't. They simply, at least for purposes of that Rule 56 motion, conceded those facts because we put those facts forward. And at that point, under Anderson or Celotax or any of those cases, it's their burden now to come forward to raise specific factual disputes, and they didn't. So in that sense, your Honor, it is absolutely as they've admitted a new argument. But in terms of the factual record that's before this court, even if you consider it, what you have on Lucent's side, we provided expert testimony on this issue. We provided the citations that I just gave you in our Rule 56 motion. And what you have on the other side is attorney argument. That's it. You have—and this is a technical issue, so under Centrica, I realize Centrica is an infringement case, but we're talking about anticipation. It's really just two sides of the same coin. You know, this court has said many times that, rightly or wrongly, that we can read patents. We know what's there. We can read the references. So to say that if you have long references, as these are, that every line and every point needs to be flagged is a concept that this court hasn't really supported. We'll let you know. True, the content of the prior art is a question of fact. But we're—in looking at summary judgment, the facts need to be undisputed or else resolved in favor of the opponent. Agreed. I agree with you, and they are undisputed here because we raised these facts and these citations that I gave you. And I can go into the reference and read to you where it shows that there's synchronization, but I think it would be a more efficient use of time since they are very straightforward citations that I've given that show that the Hockenheim reference does disclose synchronization in both the dominant and in the opulent channel. I understand you to be arguing that under the Supreme Court trilogy, including Solitex, which you mentioned by name, that we would be acting contrary to that trilogy if we erased the burden that the other side bore to show in its opposition to your summary judgment motion what the disputed facts were. I believe that's correct, Your Honor, because I believe that the Supreme Court trilogy that you lay out very specific procedures in order for there to be an orderly process. Remember, the whole purpose of summary judgment in Rule 56 is to determine whether or not the finder of facts should even have a trial, should even consider the evidence. And therefore, the procedure that's been laid out by the Supreme Court in this instance is to say— to treat this argument being made by Mr. Turner because to treat it would violate the requirements of Solitex. Yes, that is correct, Your Honor. It is not purely a waiver case. It, of course, is a waiver case, and there are issues that come before this Court all the time, like in claim construction and things like that, where we go through the discretionary factors. But this is a different posture. This is specific to Rule 56, and the Supreme Court has laid out exactly what the procedures have to be and what the burden is upon the opposing party, the non-movement, in imposing such a motion. But that having been clearly stated, you might want to directly answer Judge Newman's question about the underlying technical answer to the technical argument that Mr. Turner is seeking to present. Okay. Well, let me start with the Hockenheim reference that the synchronization in the Uplink Channel and the Domlink Channel have given those citations, and those really are the best evidence, because I'm not putting anything in new. That's what we relied upon in Rule 56, and that's what I relied upon here. With respect to the I.S. 95 reference, in the I.S. 95 reference, the argument that was made below and that I believe is being made here, although there is a little bit of a moving target even with respect to that, is that in our invention, you can send the preamble and only the preamble. In other words, what they want is, what GPT wants, rather, is to have a negative limitation right into the claims. Send the preamble and nothing else. The way they're characterizing I.S. 95 in the brief gives an intimation that somehow I.S. 95 sends data only before an engagement, in other words, only with the preamble, and not after that, but that's not correct. In fact, if it were correct, we wouldn't be having this argument about I.S. 95 and whether you could send something in addition to the preamble, because if you just take Claim 23, for example, and you look at the last element, it says transmitting a spread-spectrum signal having data from the first R.S. spread-spectrum transmitter to the B.S. spread-spectrum receiver responsive to the receipt of the acknowledgment. You send a preamble. If the base station receives that preamble, it sends back an acknowledgment. That's what we're talking about, and then data would be sent. That happens in I.S. 95. It absolutely happens, and in fact, again, on the motion for summary judgment below, we put that evidence in. We had in, if I would, 130 of the appendix shows that and 140 of the appendix, because what happens in I.S. 95, once this access probe is received, and the access probe, what it is is the preamble plus this additional overhead data. It's setup data to further setup the channel that's going to be used for the communication. Now, what happens then in I.S. 95 is once you do that, on the traffic channel, as we've done that, you have your call, you have your email, you send the data that's going to be there. There was no dispute about that. That was, again, put in the motions, and in fact, the district court recognized exactly that on page 18 of the appendix in the opinion, when the district court at the top of page 4 of the opinion found that they did not understand GVT to be arguing that I.S. 95 disclosed a one-phase process as opposed to a two-phase process. And by that I mean some of the prior art. Esmol Zeta was one of the references that they argued around in the prior art. There what you had was a situation where you didn't send data in response to acknowledgement because you sent it all as a big variable-length packet with the preamble. That was what went on there. I.S. 95, that's not what happened. You send along with the preamble some data to setup the channel, but then once you do that and you setup the channel, you send the traffic and the data. The district court understood that that was exactly, I mean, that GVT was not arguing that. They did not argue this no data being sent in response to acknowledgement, which would have been a straightforward argument to make. So what it really comes back to that they're arguing here is that these claims require preamble and nothing but a preamble to be sent. And that's not correct. I mean, as the district court recognized, the specification actually shows something in addition to the preamble. It shows these pilots that must be sent with the preamble. So your argument essentially is for Mr. Turner to prevail, we would have to agree with his claim construction, which implies an additional limitation that's actually not found in the text of the claim. That's correct. It's not found in the text of the claim. The claim is a comprising claim. And there's a reason for that. It really depends. You have to read the claim in light of the specification. My guess is that if they were attempting to enforce this claim against an infringer who was sending the data, the full message, along with the preamble in the initial signal, that claim construction would be rejected. So it's very difficult when you have a complex invention and the terseness of the claim to tell us it must be read in a way contrary to the specification, because it can be read that way. And can I address directly exactly the example that you gave, Your Honor? If there were a situation where data was, as we discussed in your example, was sent with the preamble and not sent in response to acknowledgment, in other words, send all your data. That's I.S. 95, isn't it? No, that is not I.S. 95. I.S. 95 does not do that. I.S. 95 sends some channel control information with the preamble to set up the channel. Once the acknowledgment is received from the base station, on the reverse traffic channel, which is the citations that I gave and were in our summary judgment motion, the 130 and 140 of the appendix, what happens then is the data, meaning the telephone call, the e-mail, the messages that you are sending are sent back on the traffic channel in response to the acknowledgment. So it really does come down to a situation where what they're asking is exclude I.S. 95 on a factual basis because you perform all the steps, but you do something in addition. You send some data, this control data, with the preamble, and there's nothing in the specification. There's nothing in the claim language. There's nothing in the prosecution history to import such a negative limitation into the claims. I think that's a stretch of the claim language. It might well be that the claim should be construed that way, but including in the very last claim clause that the data are then transmitted, I think the fair reading is that they're not transmitted until you get the acknowledgment. It may depend on what you mean by the data. Again, and that was actually somewhat of a dispute in the briefs because that was a new argument. As opposed to the pilot data, the message. Correct. But my point here is that in I.S. 95 you do have that, and there was no dispute about that below. There was never a statement below that said that that element is not met. I agree that if there were no data sent in response to an acknowledgment, it would be a very difficult argument for me to come before this court and say that that reference nonetheless anticipates. It's not the argument I'm making because, as was not disputed below, that reference does send data in response to the acknowledgment. All right. Time has expired. Thank you, Mr. Turner. You have three minutes for rebuttal. I'd just like to highlight a few things. First of all, for Judge Moore, I'd like to clarify the question about our involvement or non-involvement. My firm represented the principle of Golden Bridge in a separate manner, and when his counsel on the patent case withdrew, he asked us what to do. We intervened, and I think my firm appeared briefly and then convinced our counsel to get back involved with the case at the trial court level. So our firm probably showed up briefly on the record, but then we were not actually the hands-on lawyers doing the trial and, in fact, then handled an antitrust case for Golden Bridge with some of the same parties. So we knew what was going on, but it's true I was not the trial counsel. I just wanted to clarify that. I'm not a total stranger, but I didn't do the work on the trial in the patent case. I guess with my remaining time, what I would like to do is highlight some of the factual things that are flying around in the case that really lead us back to the fact that we're here on summary judgment. We've heard about what the I.S. 95 does or doesn't do. We've heard about how it does synchronize and when it synchronizes. There were two experts in the case. I believe theirs was Berger and ours was Schilling, and there's testimony that I've heard from both of them about what I.S. 95 means and what it does, and they had two different views on the factual side of what these things meant. And I would just rely on the briefing and the record to demonstrate that with respect to what I.S. 95 does, there is an issue of fact that would mandate this going back to the trial court. At the end of Lucent's counsel's time there, all of a sudden we started talking about what's a message, what's a data, what's a pilot signal. I think the fact that we're sitting here today and that's still an issue of fact about what the understanding of those words are highlights that there is another situation there that likely raises an issue of fact. We've tried to distinguish the invention from I.S. 95 by talking about the fact that it's a preamble without a message in our case and a preamble with a message in I.S. 95. I didn't find very many definitions for what a pilot signal is, which is what is shown in the invention as being potentially accompanying the preamble, but I did notice in the Hockenden reference on page A176, he defines a pilot signal as a signal without data modulation. So in other words, it in fact is a signal that doesn't have a message attached to it, which gets it back consistent with the way we've interpreted that in our return to court. Anticipation is a question of fact. The standard is clear and convincing. The expert testimony raises issues of fact. There's issues of fact regarding what I.S. 95 and all these terms mean. We think on that basis, without regard to the broadcast channel issue, that the case should be remanded back to the district court. Thank you. The case is submitted.